May it please the Court, Eli Gottesdiener on behalf of Plaintiff Appellants. I'd like to reserve five minutes for rebuttal. Beginning in 1998, Bank of America took the assets out of 60,000 individual 401k trust accounts. Beginning in 1998, Bank of America took the assets for itself, making a profit of around $110 million. Eventually... That's not quite the case. They didn't invest it for themselves. There's a reason it all happened, as I understand it. You've helped me with this as we go along, which I hope, because this is not something we deal with every day. But as I understand it, initially you've got these 401k plans in which the investors have options. And it all arises because in making their investment options, the bank has realized that it's probably not the level of profit that could be made if they were doing it. So they gave them a choice. Is that right? Not exactly, Your Honor. That last statement is probably what you disagree with. Well, no... Or is it not the first? No, I do disagree with Your Honor's statement in the sense of they gave them the choice whether to transfer their 401k assets out of the 401k plan. But they didn't give them the choice that the law, in fact, which is the ultimate point of one of my points of the presentation, is they could not have taken away, not a choice, a right. Because attached to the right, the basic right in a 401k plan is the right to the contributions plus the investment gains on those contributions. The separateness of the account. Yes. And part of the separate account feature is the right to the actual gains and losses. So what they gave them was a choice that, in effect, the law prevents them from, prevents participants from making, you cannot consent to what the bank was offering people. And that arises, and I think that's really where the issue is for me at least. I'm thinking of it in the context of a trust account that an individual, you can't take someone's trust money and pay them what they otherwise would make on it and make something more on it. But those are mostly ethical type considerations. I disagree, Your Honor. That's exactly the issue in this case. The point of the law is where I'm trying to point. The law is... Where does it arise from, either under the code or through the regulations, treasurer regulations, what is the law we're looking at that makes that activity illegal? Well, before we get to illegal, the flip side of that is what gives the right. The right is Section 334 of ERISA. The case law controlling is the LaRue decision of 2008 by the Supreme Court, which the district court didn't cite. In re-mutual funds, this court's decision in 2008, which the district court didn't cite. And in both of those cases, the courts said that the benefit is the gains and losses actually made with those contributions. But in this case, there were hypothetical gains and losses. Is that the point you're trying to make? Yes, and that's not an adequate substitute. Okay, but Mr. Gosner, you're pleading a cause of action under Section 1132A1, right? And then you allude to A3, the equitable relief, chiefly in your reply brief. It looks like this is morphing a little bit. But in your pleadings, you're asserting a Section A1 claim. Isn't that correct? Our principal claim here that the district court missed is that this is a simple claim. Yes or no, you're pleading a Section 1 claim. Yes, I'm not trying to be evasive. I just wanted to make... Let me follow up and then you can make your point, sir. Okay. Section 1 says that a civil action may be brought by the plaintiff's beneficiary to recover benefits due to him under the terms of his plan. Okay? To enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan. Okay, and here he's trying to recover benefits allegedly due to him under the plan. How are these benefits due to him under the plan? Because it is a mandatory term of every 401k contract that the benefits under the plan equal the contributions into the account and the actual gains and losses made on those contributions. And that is immutable, inalienable, non-forfeitable. That is what the statute says. That is what the IRS held. That is what the bank concedes in its summary judgment papers, the TAM in this case interpreting the IRS 1988 transfer regulation held, that the investment returns that the bank generated with my client's 401k contributions, they aren't profits. Under ERISA, they are part of my client's retirement benefits. Right, but under the law, because the accounts had to be made separate, those accounts were never pooled legally, were they? They were always separate accounts. I mean, didn't the IRS? You're making my point, which is even though they commingled, which is not inappropriate, they can do that. And Judge Wynn's point is the bank thought they could do better for people. They thought they could do better on those account contributions, but it's got to be for the benefit of the participant. They did do better on them. I mean, that's just the fact of the case. They did do better. Exactly. And so the point is that those are inalienable benefits. But I'm trying to get back to your legal theory, though, here. So are you or are you not relying on 1132A13, a request for equitable relief? As belt and suspenders, and that's what I was just trying to get in. Our principal claim is a claim for miscalculation of benefits due under a 401k plan. But doesn't, Judge Keenan's question is as to an A3 claim, which you didn't really jump on until your reply briefed, but isn't that your best position because you've got this closing agreement that makes all these things moot under A1 and A2? And under A2, as I understand it, your clients are not bringing this action on behalf of the plan. We are, Your Honor. What I wanted to say, and I'm sorry to have interrupted the court, we've invoked all of these provisions. It's just not possible that under ERISA, when Congress has established and LaRue and In Re Mutual funds say that you have standing to sue to recover the benefits that are supposed to be in your retirement account. It can't be that all three of these provisions, A1B, which is contractual in nature, A2, which is in effect derivative on behalf of the plan, but in a 401k plan, the plan is the collection of all the accounts, and A3, which is the kitchen sink. It's not possible that plaintiffs do not have a right of recovery. Well, you're saying it's not possible. Do you have case law? I mean, what law are you Why is it not possible? Because the Hines decision that we quote, 2004 United States Supreme Court, there are provisions of ERISA that make mandatory in any retirement contract that an employer may offer to a participant certain terms. One of the substantive terms derived from 334 of ERISA and upheld in LaRue and In Re Mutual fund is, it's a benefit formula. It's very simple. Benefit equals the account contributions that my clients put into the accounts, and then the actual gains and losses. Well, they got the returns they selected. Isn't this case different from a lot of these cases that you're citing? Because here, they made an election. But the law, I'm sorry. They got what they asked for. But that's not the test. I'm sorry, Your Honor. Consent is not a defense. That is flat out in the statute. They cannot consent to this. It's like dueling. Well, no, but what I'm saying is they got the IRS agreement, put them back in the situation to get what they would have had, and you're disagreeing. You're saying if these accounts had never been made separate and their selections had been put to the test on the separate account money, they got that, didn't they? Your Honor, they did not get the actual investment gains. They didn't get what you referred to as the spread. The additional money that Bank of America made by making its own investment decisions pooling the aggregate. Your Honor, it's not the bank's contributions. The law says it's a mandatory term of all 401k plans. The actual investment returns go to the participants. But see, you're citing cases that are defined benefit plans. Your Honor, what the bank did was unprecedented. So I'm sorry, I don't have a case. It's a defined benefit plan. It's an entirely different concept. And what I'm asking you is to tell us, if you were writing the opinion of the court, these cases you're citing are really not helpful with regard to the defined benefit plan analysis. These are 401ks, and they're different. They're different under the law. And that's why I'm citing LaRue and In Re Mutual Funds. In Re Mutual Funds was a defined benefit plan. No, it wasn't, Your Honor. I'm sorry. In Re Mutual Funds is directly on point. In Re Mutual Funds is directly on point and is controlling. And what it says is a participant who cashed out in a 401k plan, defined contribution plan. It's a pension plan, not a contribution plan. Both kinds of plans are pension plans, Your Honor. I'm sorry, and I recognize that this is confusing. The court will see In Re Mutual Funds is controlling. It is a defined contribution plan case. It's a 401k case. It is on all fours. What happened in In Re Mutual Funds? In In Re Mutual Funds, the participants' accounts were invested by a fiduciary poorly. This circuit held that an analogy would be if they were stolen out of the account. The district court was reversed because the district court threw the case out along the lines that are implied in the court's questions. And this circuit held they have standing to recover the benefits that should have been in their account. This comes down to you cannot swap out actual returns for virtual returns. The bank provided my clients with some of the actual gains and losses they earned when they took them and moved them out of the 401k plan. Our simple claim that the district court did not understand was a miscalculation of the account balance. Our accrued benefit under ERISA section 323 is our balance of our account. In In Re Mutual Funds, this court held you have standing to argue that the balance of your account, which is defined in 334 as the contributions plus the actual gains and losses, was less than it should be. So you are entitled to argue it should be more. That's a claim for benefits under section A1B. The fact is that the text of Well, while you're at section A1B, walk in my world a little bit. And if I were to say that's a reformation of the plan, you're not going to prevail on that? No, it's not Then let me just walk in my world. I say walk in my world. I say that. I'm just saying if I say that. Okay, now I understand you don't think that.  And we do, of course. If you were to speak to A3, how do you prevail under that? Because it's a simple claim for relief, either other equitable relief or injunctive relief. The text of A1B says you can sue to enforce any provision of ERISA. You can also sue to enforce any provision of the plan. Could you point us to your complaint that discusses A3 and your request for equitable relief? And maybe we could start from there. Okay. The fourth amended complaint Give us the page, please. You're referring to appendix 236? I believe so, Your Honor. It starts at 199? Yeah. First, I would say, Your Honor, there's no obligation to cite law in the complaint. We make very specific, and we did brief this, that we asked for all available relief under 502A. So we didn't limit ourselves to A1B. You asked for it under A3 as well, on appendix 236. Thank you. But you were referring to the disgorgement of benefits. And that's exactly our point, is that this is ultimately all roads lead to Rome. And Ingray Mutual Funds itself says that. And Chief Justice Roberts' concurrence in LaRue says that. There's a claim for benefits. There's a claim under the plan for losses. And then there's a claim under A3 for disgorgement of benefits. They're all getting at the same thing. Our claim is very simple. It is for miscalculation of legally required 401k plan benefits. The IRS came down four square on our side. The bank, in its summary judgment submissions, conceded that the TAM, which they don't dispute as controlling interpretation of the applicable statutes and regulations, says that a defined contribution plan benefit must always have the gains and losses that are actually made. It is irrelevant that people made these other choices. That was something that the bank needed to offer people to induce them to move the money over. The IRS held that it doesn't matter what a sponsor calls it. It doesn't matter where the sponsor moves it. That's why this is confusing, because they moved it into a defined benefit plan. It's very confusing. But there's one immutable fact. It doesn't change its character. Think of the contributions and think of the actual returns being stapled to them. They follow those contributions wherever they may lead. This court has already decided this in in-ray mutual funds. This case is indistinguishable except for the fact that this has never been done before. So you're right. Is this true for all of the plan participants? No. You're absolutely right that there are some people who will never recover, because when they got, using this virtual methodology, they got the full actual gains and losses attributable to the investment of their contributions. But the case is not well left alone for us to know which people have gained or won't. But it's simply, and here's the situation. Where did the 11.6% figure come from? It's a very bank-friendly compromise that the bank offered the IRS. Here's where it comes from. For eight years, the bank calculated returns at about 54%, cumulative. Not cumulative for all the years. The average participant got a 54% return. The bank said that its return was 66%. So the difference was 11%. What happened in 2009 when the bank made additional payments? The bank used, and the IRS went along with this as a compromise, used that 11.6 figure as a floor. And it said if you, some participant, got between 0 and 11.6, we'll up you to 11.6. Everybody didn't get it. Very few people. Only $8.5 million. What is the separate account feature? The separate account feature is nothing other than what I've been saying all along. A 401k account is a trust account. A separate account feature, the bank admits, was construed conclusively by the IRS to be the aspect, the characteristics of this benefit, which is contributions plus actual returns. The separate account feature is nothing more than you treat it like a trust account. Is it like an individual account under the code? Yes. It's another way of saying it. The code and ERISA both sometimes call it an individual account, and other places they call it a separate account. The separate account feature is you get the full funding protection that you always know that everything in your account is everything that you're entitled to because your assets are actually being invested and you're being shown the reflection of those investments. And you have the protection of always getting those actual investment gains. And that cannot be substituted, and it doesn't change because they moved the money out into the defined benefit plan and called it a duck. It's still a 401k plan benefit. With the guarantee? I'm sorry? With the guarantee. Why wasn't the guarantee sufficient here from the bank? Well, first of all, the guarantee, legally it's not sufficient, and factually the bank offered the guarantee because there was really no skin off their nose. After, remember those figures I quoted, 54% after eight years, participants earned that amount. To give somebody a minimum guarantee of zero, certainly it has value. Last question on this. If the evidence showed that the participants, had the participants remained in the original 401k plan, they would not be better off than where they are right now. Does that move this issue? Not at all. It's irrelevant because the question is. Well, it's not irrelevant because that's the basis in which the judge decided the case. So you've got to convince us that it was error, but it's not irrelevant to the decision in this case. I agree, Your Honor. The key in this case comes down to the judge saying this case mistakes gain for loss. But he is mistaken because. No, no, I understand. I understand. Don't you agree that that's what this comes down to? Yes, Your Honor, I do. But if I could make sure that my point is not missed because it's complicated. The gain is contractually by law protected. It has to be given to the participant. It cannot be alienated. Well, that's the issue in the case. Well, I. I mean, that's your statement, but that's what we have to ask. That's the merits. Actually, with respect, that's the merits. I think the court can and should reach the merits, but the court doesn't have to. This is actually here on standing ground. The question is whether they pleaded injury. I'm sorry? Excuse me, whether they have constitutional standing, correct? Yes, and the answer is we have to have constitutional standing because our contractual. We have a claim under the statute and the plan contract itself to the actual gains and losses. They can write whatever they want. They can call it whatever they want, but they can't change that fact. That's the Heinz case. The court said that there was no injury. Tell me if you think this is a fair statement of your position. Your position is that the court confused injury with damages, and the court found wrongly, according to you, that there were no damages and therefore concluded there was no injury for a basis of standing. Is that pretty much what you're saying? I don't want to disagree with the court, but it's not our position. Our position is that this is a contract. It is regulated by statute. I understand that. It's a contractual right. You've got to understand the conceptual framework that we have to operate under, and that is whether the trial court made a mistake. You're telling us what you think the law is, but you haven't made, at least from my perspective, any effort to walk us through why the trial court made a mistake. You're simply stating, from your perspective, universal legal principles. It is a much more effective argument if you can walk us through why you think the trial court made a mistake. Because I think he had a rough justice sense and somehow thought that we were seeking disgorgement. The bank made all kinds of arguments. Well, you were seeking disgorgement. But of benefits. But of benefits. Let me try it this way. If I were to agree with the court's original question, that the judge mistook damages for what was a claim for benefits, I'll agree with that. To simplify it, and I will point the court to in-ray mutual funds. It's the holding of in-ray. You mean it's a contractual right that cannot be waived. Exactly, and it cannot be changed. The bank tried to rewrite the benefit formula that was in there, had to be in there. And, in fact, we have an argument that's in the briefs. The IRS also agreed with it. Who are the parties to this contract? I'm sorry? Who are the parties to this contract? Interesting point. The grantor and the trustee. It's a third-party beneficiary. My clients are the third-party beneficiary of this pension plan contract. It is regulated by statute, and under Hines, the global directive of ERISA says the substantive content of a 401K benefit. Hines was not a defined contribution plan, but LaRue was. And LaRue, Justice Thomas, in his concurrence, said it perfectly, and we quote this on page 37. He said that the benefit in a defined contribution plan, a 401K plan, has to be, they have to be allocated the actual gains and losses. Here's the quote. You're saying it's concurrence? You mean the majority section of the opinion or just as concurrence? Everybody agreed it was unanimous. Justice Stevens wrote the majority. Chief Justice Roberts. Our definition of concurrence is not majority. The reason you write up concurrence is because you kind of have a separate view or there's something different. Maybe add into it. I'm not disagreeing with where you're going with it. Yes, he said you can get right to the matter of things exactly as our position is. His quote, ERISA requires the assets of a defined contribution plan, including gains and losses and legal recoveries, to be allocated for bookkeeping purposes to individual accounts within the plan for the beneficial interest of the participants whose benefits in turn depend on the allocated amounts. Our benefits are very simply the contributions plus the actual gains and losses. Okay, Mr. Gosner, you may not even have rebuttal time left. I'm not sure here. Yeah, you're out completely. Thank you, sir. Thank you, Your Honor. Okay, Mr. Phillips. Mr. Phillips, if you could start off. I think Mr. Gosner was right in that I was wrong on in-rate mutual funds. I was flipping my cases around. Right. So it was a 401k case. Why doesn't that language apply in this case? Because the fundamental difference between this case and every other case that has ever occurred is the actions taken by the bank in response to the IRS action, and that is essentially to provide what the district court found, and these are the two, to my mind, fundamental findings of the district court, that the actions by the bank in response to the IRS completely and irrevocably eradicated the effects of the violation. Now, obviously, we assume a violation for these purposes, but in our judgment it's still just an alleged violation. But it eradicated all of the effects, and I didn't hear my colleague say anything in response to that. And then second, plaintiff's benefits are greater today, Judge Winn, you asked this question, than they would have been if the transfer never occurred. We agree that the IRS clearly had standing to protect the plan, and it took action to do that. And then it went further. It not only exacted a fine from my client, but it also ensured that all of the monies were returned, that everything that was promised in the plan as a 401k would be returned and put into an actual account, and went even further and provided a minimum guarantee for all of the plan participants under these circumstances. Judge Keenan, you asked the question, where is the error here? There's no violation of the plan. There's no misstatements made to the plan participants in their decision to voluntarily transfer these funds. There's nothing in the IRS that speaks directly to this. There's nothing in ERISA that speaks directly to this. There's nothing in the regulations. All he did is say he's got some kind of metaphysical right to this, and the judge responded to that. Judge Mullins said... No harm, no foul. But he went even further than that. Not only no harm, no foul, but you're better off than you would have been if they hadn't done anything in the first instance. Let's agree that this should have never happened, that you can't do this again, you shouldn't have done this in the first instance. Does that agree? Well, we're clearly never going to do it again under the circumstances. That was Judge Mullin made that finding. That's the basis for his mootness determination, is that obviously... Why wouldn't you? Because if it's not illegal in the sense of doing it, do it. And then at the end of it, give them the same agreement and pocket the difference. Why wouldn't you just keep doing it? Well, in the first place, we had to pay a fine to the IRS. And in the second place... Would you agree that once you paid the fine and everything in it, the bank still profited from this? Well, actually, there's nothing in the record specifically that tells you that. Remember, that plan exists. The non-401k part of the plan, that plan exists for 140,000 other employees, even after the 401k matters were all put over there. So you've got to figure out how they benefit from all of this. Let's assume that A1 and A2 are not going to help the plans. I think that's clear. All right, as to A3, however... Not too clear to the other side of it. As to A3... That will always be true, I think, Your Honor. Why can't they bring... Why can't they recover under inequity for either a surcharge or unjust enrichment? Because in order to have equity step in, there has to have been some wrongdoing beyond a mere technical violation of the statute. And in this context, it seems to me... And Judge Mullen is very clear about this. In this context, there are no equitable principles that operate because every plan participant was given full disclosure as to exactly what was going to happen. Everything that was disclosed took place precisely that way. At the end of the day, they ended up with everything they were promised and more. And under those circumstances, there's no room for equity to go beyond that because there's no injury at all. Is that a merits decision, though? That's the question I have. Did he kind of morph into the merits of the case rather than simply decide whether there was an injury alleged for purposes of Article III? Well, an injury proved by... I mean, because we're at the summary judgment stage at this point. I mean, I do think there is a distinct overlap between those two, and ultimately what the judge said with respect to each of those three claims is that there is no basis under B-3 to say that he's entitled to equitable relief, and he went through that very carefully. He does it at the beginning as a sort of standing analysis, but that portion of the analysis does seem to me to be fully addressed the merits. And essentially, and again, I haven't heard my colleague explain on what basis any of those statements were wrong. That's why it seems to me at the end of the day the right answer is that the court ought to affirm under the situation. Let's talk about a practical problem in this case called the statute of limitations. Yes, Your Honor. Should we decide it, or should we demand it back for the district court to hear it in the first instance? Well, my hope is you'll decide it on the first issue, and therefore you don't have to address the statute of limitations. I understand that, and if the court chooses to do that, we would have no quarrel with it. We wouldn't be surprised by a decision along those lines. That said, I think it's a pure question of law that this court could resolve on its own at this point. Which way would you have us decide it? Well, if you're going to decide it my way, I'd have you decide it. I think it's an easy enough issue. Clearly, the injury took place in 1998. That's the plaintiff's allegation, and the statute of limitations is a three-year statute of limitations under either the Seventh Circuit or this court's rulings, and therefore this action is clearly time-barred under those circumstances. I think the court could reach that conclusion pretty readily, but in all honesty, Judge Floyd, I think it's frankly a substantially easier decision for the court to reach to say that Judge Mullen made no mistake with respect to his analysis under these circumstances, and on that basis affirm. If the court has no further questions. Well, I have a few more questions on it. Let's go back to this initial. You made a statement that there was no evidence that the bank profited from it, and I'm thinking about the original IRS offer to settle. Right. And that is basically I thought it says paid it greater. It was there or basically what you made under the statute, and the bank says, no, we don't want to do that, and you ultimately settled for sort of a hybrid of that. Right. Did it include the fine? Did the fine come up in the second one, and then plus this business of paying it back with 11 percent? Yes. I mean, that was our counterproposal was to come up with the 11 percent. I don't remember whether the fine may have been there all along from the IRS's perspective, but I think it's important to recognize that in the closing agreement, you know, under the guidelines of the IRS, the IRS is obligated to ensure that every taxpayer is fully recompensed for every year and that disagreement complied with that, and therefore they got everything that they were entitled to, which is why I think the judge quite easily concluded that under the IRS's own view of this case, there was no injury under these circumstances. What have you done here to make this legal? Could you simply say, we'll take your 401 plan, and we're going to invest it, and that's the end of it. You don't get a choice. Could you have done that? No. Pretty clearly we could not have done that. That would be literally taking their money from them, which is why we thought, and we still think, that taking the action we did as long as we fully disclosed what we were doing and only did it with respect to volunteers was a permissible way to proceed. I mean, again, remember what the violation is. It's the separate account feature, and it's a temporary loss of a separate account feature. That, to my mind, is much more of a technical violation, and that's the reason why the IRS can take the action it did. But it doesn't create this basis of rights that the plaintiff has made the claim to, or at least the plaintiff has never been able to show on what basis rights arise out of that as opposed to simply a protection of the plan. Because remember what the separate account feature does. You define that term separate account feature. Right. That's the 401. Every individual has his or her own individual retirement plan, and he or she makes his or her own investment decisions in that plan. And they are protected from the bank or the plan generally failing, but they incur the risk of their own investment choices. So if, as most of us suffered in 2008, the investments completely tank, your retirement plan could be completely eliminated. Under this scenario the bank had, and the bank did make money on this, we had Bank of America. We know Bank of America is a pretty substantial bank. What is this mom-and-pop little bank that did this and lost everything? Well, I think that's why the IRS took the position it did, which is it prefers to protect the plan. What puts them in the same or better position, and I'm trying to say is that in a different scenario. I know we've got a different set of facts, but if we write a law to that effect it would apply the same for them to say that's okay even though ultimately that guarantee, they couldn't live up to that guarantee. They didn't get 11% because mom-and-pop bank failed and they had bad investments. What would be the end result with that? Well, in that situation the employees would be in trouble, obviously, because at the end of the day if the underlying entity has gone out of business and there are no assets left to pay the retirement, then obviously they are harmed. And that is the reason for the separate account feature, is to protect against the risk that the bank or the employer will fail. Would that, in your favor, help that situation? I mean, wouldn't it apply there equally that we just say tough luck, this bank took your money and everything and invested it and lost it, but ultimately you can go to the PBC, but you're not going to get anything more than what that amount is. You're not going to be where you would have been had they just left your money where it's supposed to be and allowed you to invest it. And that is precisely the position the IRS takes, and that is exactly why they took that position. And that's why they say this is a violation. But the issue is not whether this is a violation. You can assume this is a violation. The difference is that it turned out well here. I mean, what I'm trying to understand is how does it work in terms of writing the law for a situation where it doesn't turn out. I'm thinking of it, and I know, Mr. Coates, you said it can't happen again. It won't happen again. It probably won't. But intuitively, I don't see what keeps it from happening again. If we write a decision to say, well, at the end of the day, you pay a little fine and you can negotiate with IRS or whatever you work it out with, if you can show the investors a better off than they were when you started, then no harm, no foul. Because that seems to be the ultimate criteria. Well, if you do this, and at the end of the day, the investors are better off than they were if they kept it, then they can do it. But it doesn't make the underlying act legal. That's not the issue. The underlying act has been determined by the IRS. Now, again, and for purposes of this argument, we don't contest that, that the action here violated ERISA. No question about that. The issue is, what do you do at the back end? And the answer is, the IRS completely protected all of the individuals under these circumstances. If we didn't have that, we would have a completely different issue before this court. And obviously, the next time a case comes along, which I don't think will ever happen, but if the next time a case comes along and the bank or the employer has, in fact, left injured employees, there will be obviously some basis, some recourse that might or might not be available. But that's not what Judge Mullen specifically found. Maybe just not a windfall, but if they get something even more, some of them would have quite a windfall on this because their investments never pan out to be what the bank got. Well, absolutely. And if you play this through, through 2008, which is after the record in this case is closed, quite before the 2008 downturn, there are a lot of people who will benefit, a lot of employees who benefited greatly from the guarantees that were embedded in this arrangement because a lot of people lost a lot of money and the bank paid significant amounts of money under those circumstances. So, as I say, it's not just no harm, no foul. It is no harm and significant enhanced situation than what any of these employees would have enjoyed otherwise. And, again, it seems to me in those circumstances there's no injury and at the end of the day there is no basis in anything that the plaintiffs have alleged as to how you get at a remedy when there is nothing there when there's been no injury. Why aren't they pleading injury, though, at Joint Appendix 236 when they're citing Subsection 8.3 and asking for disgorgement? Well, there is a disjoinder, I think, in their logic. No question. They're seeming to say that because Bank of America made this money they were entitled to it. Right, exactly. But if you look back to the statute, and the statute under Subsection 3 talks about appropriate equitable relief to address violations of the plan or to enforce the terms of the plan. Well, it wouldn't be to enforce the terms of the plan. Fairly not. It's not a violation of the plan either. Why would it be to redress a violation of the plan? Because the plan specifically provided for this. And his allegations all along have been. The violation is of ERISA rather than the violation of the plan. Would that be your answer? That is my answer. And this is a technical violation. And, again, for disgorgement it requires some wrongdoing that caused an injury. And here, whatever wrongdoing there was, there was no injury. And under those circumstances there is no basis for disgorgement even if it's alleged in the complaint. The record simply doesn't support it. And Judge Mullen went through each of those equitable arguments and rejected all of them as having no basis in law. Or, excuse me, as having no basis under the circumstances of this case. That's actually the appropriate way to describe that. Treasure regulations refer to a separate account feature. Yes, Your Honor. And the code talks about individual account. That word feature add anything to that? Are they interchangeable? I think it's interchangeable. The feature is the protection that's embedded in there to ensure against the risk of the employer failing. And clearly that's the intent of it. But the good news is the employer didn't fail in this case. The IRS enforced the law. It found a violation. Again, we can quarrel about that in another setting, but in this context we accept that there is a violation. And then the question is what do you do about it in circumstances where, in point of fact, the plaintiffs were not injured and indeed are substantially better off than they would have been. Those are the findings Judge Mullen made. There's no basis for second-guessing those. And for that reason, his discernment should be affirmed. Should the bank benefit from this violation? Should it? I mean, obviously, from your perspective, you're saying that that's not, I don't know if the word is relevant, but that's not the issue here. But really, I mean, when you think about it, it seems like the plaintiffs are saying, with the separate account feature, banks shouldn't be benefiting from my money even if I'm not good at investing my own money. They shouldn't be allowed to take my money, invest it, and give me that which I'm not good at and keep that that they are good at. Isn't that what happened? Well, yes, to some extent. Although, again, remember, you've got 60,000 employees who agreed voluntarily to enter into this program. You've got 140,000 other employees who are already in that plan. And those monies were all commingled, and the bank did, in fact, earn money. How much of it they earned off of the 60,000 is completely up in the air at this point, and particularly in the wake of the fines, the costs to implement this plan, and the ongoing costs that continue as a consequence of it, all of which I think go to, Judge Winn, your question, would this happen again? I don't think any person would go down this path at all because this is not some kind of an opportunity for a pot of gold at the end of the rainbow. This is an opportunity for 10 years of litigation. And I know very few lawyers who embrace that course enthusiastically. It's good for lawyers, but not, obviously, particularly good for... But wouldn't it be 10 years of litigation if you knew that the end result, all you had to do is just say, well, we'll close it out. Well, you bet off in your work when you start. If that's the end result of it, notwithstanding the fines that could be levied or the penalties that Marissa probably wouldn't like, the fact that you snubbed them in the face with it again. Right. But, I mean, again, I don't think there's any basis for the court to ultimately second-guess Judge Mullen's assessment that at the end of the day, the plan is better off, obviously, in some ways, but none of the individuals involved and none of their accounts has in any way been remotely harmed as a consequence of that. That, I think, is the basis on which the court ought to decide this case. You've got just a second. I'm enjoying the exchange because I'm learning a lot here, but I'm just intrigued. If the bank faces the same situation, though, and I'm trying to see, is there a scenario, how could this be fixed for revenue to satisfy everyone? Well, you've got people with a significant 401k plan there. They are investing poorly and unwisely. They have all this power of money, and the bank knows it has experts who can do this and really make money. There's nothing they can do. They must just allow this to continue on in perpetuity, even though the investors… No, I suspect what you would do under those circumstances is you would go to the IRS. …want to do something. What I'm trying to say, is there anything legally that could be done… I think you would go to the IRS and try to get the IRS to approve it. Indeed, we asked the IRS for approval and thought we had gotten approval for what we did in this particular case. Now, the IRS takes a different view over time, but I do think you could go and see if the IRS would consent under those circumstances. Whether they would or not, who knows. Didn't Amara open the door to more relief under 502A3? It did, but… Such as make whole relief? Right, in circumstances where there is some form of injury. There's nothing to make whole here, Judge Floyd. These people were made whole, and then some. And under those circumstances, they got everything Amara would have provided for, and then some. Okay, is it fair to say then that your position is that in order for there to be relief under A3, they have to be entitled to equitable relief under the terms of their plan? I would, yes. Which is what Amara said that the trial court on remand… Right, would have to take on. Would have to take on. Exactly, and there's nothing in the plan under these circumstances, Judge Floyd. Just quickly, differentiate the in-rate mutual case and Amara case, because the other side relied heavily on those cases. And tell us where that's wrong. Because those cases just use the term benefits and make whole, assuming that there are benefits available without actually telling you how do you determine whether benefits are available, and assuming that the participants were not made whole. Here, we know what the benefits are. The benefits are exactly what they would have gotten if no transfers had ever taken place. And they got every nickel of that, and they got additional protections that have been extraordinarily valuable from 2005 forward. And under those circumstances, neither of those cases speaks to this very unique situation where you have the employer responding to the IRS and, in fact, providing not only all the relief to which the participants are entitled, but more in addition to that, Your Honor. And is equity tied to the plan, or is equity just equity? As I understand, Amara, it's tied to the plan. Okay, thank you. Thank you, Your Honor. Thank you. We'll come down to Greek Council and then proceed to the next case.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Henry F. Floyd